ANNIE LANE, RELATOR-RESPONDENT, v. FREDERICK BIGELOW, BUILDING INSPECTOR OF THE CITY OF NEWARK, AND RUSSELL B. RANKIN, SECRETARY OF THE BOARD OF ADJUSTMENT OF THE CITY OF NEWARK, RESPONDENTS-APPELLANTS.

Argued October 18, 1946—Decided January 17, 1947.

For the appellants, *Thomas L. Parsonnet* (*Joseph A. Ward*, of counsel).

For the respondent, *Kristeller & Zucker* (*Saul J. Zucker* and *Charles Silber*, of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a zoning case. *R. S.* 40:55–30, *et seq.* The meritorious question for decision is whether appellants were properly ordered to issue a permit to respondent to change her existing non-conforming structure of long standing, and to facilitate the non-conforming uses made thereof as an automobile service station, to a modern drive-in automobile service station.

Respondent, Annie Lane, is the owner of the premises located at the southwest corner of Heller Parkway and Woodside Avenue which are more commonly known as 22-28 Heller Parkway, Newark, New Jersey, hereafter referred to as City. Said premises have a frontage of 100 feet on Heller Parkway and Woodside Avenue. For over 22 years, long prior to and subsequent to the zoning ordinance passed by the City there were on said premises a public garage, and some 33 individual garages. One or two of the individual garages were converted into a store for the sale of automotive products, and one or two of the others were converted into an automobile repair station. These premises were built around an interior court in which there were installed and operated two gasoline pumps for the sale and distribution of gasoline; and respondent also sold oil and related products on said premises. All these

activities were conducted pursuant to license issued to respondent by the City. Additionally, the City was directed by writ of *mandamus*, allowed on May 7th, 1946, by the Supreme Court, to issue a license to respondent to permit the storage of 4,500 gallons of gasoline on said premises. It is conceded that the aforestated existing structures and uses made of them, at the time and subsequent to the passage of the zoning ordinance by the City, were continued on the authority of *R. S.* 40:55–48 (non-conforming building and uses; continuance of). The premises, under the zoning ordinance, are located in a "Third Residential Zone."

This was the situation when respondent made an application to the building inspector of the City for a permit to change the structures, and to facilitate the non-conforming uses made thereof, to a modern drive-in service station. This change contemplated the removal of approximately 35 feet of the building fronting on Heller Parkway for the purpose of enlarging the entrance to the interior court from its present eight foot driveway to an entrance of approximately 13 feet and to modernize the structures. The building inspector and the secretary of the Board of Adjustment (the latter pursuant to ordinance of the City) disapproved the application on the grounds that the proposed changes would be "disadvantageous to the owners of residences" and be an "increase [in the] present hazardous conditions, contrary to the public welfare and safety," and that it would "increase the danger to the children passing to and from the two schools on the adjacent corner." Parenthetically, let it be observed that there are no facts to support these grounds; they are the conclusions of the secretary of the Board of Adjustment stated in affidavit form. And the disapproval was further based upon the grounds that the permit comprehended changes contrary to *R. S.* 40:55–48 (non-conforming use), and that such changes were also contrary to the following sections of the City zoning ordinance, namely, section 5 (use regulations controlling third residential districts), and section 12 (non-conforming buildings and uses), and section 13. Section 12 is in the words of *R. S.* 40:55–48 but added thereto is the following:

"provided, however, that nothing contained herein shall be deemed to constitute a waiver of a violation of any other ordinance therefore enacted. No non-conforming use shall be extended at the expense of a conforming use."

And, section 13 reads as follows:

"7. Notwithstanding the provisions of this section, no building or premises used in whole or in part as a public garage shall be altered or enlarged, nor shall the character of its occupancy or service be changed, except to a conforming use."

Mr. Justice Bodine, after hearing, granted the relief sought and directed that the pleadings be molded for the purpose of entering a judgment reviewable in this court. The pleadings were molded accordingly. Relator filed an alternative writ, appellants made a return to said writ, respondent demurred to the return and appellants joined in the demurrer. A rule for final judgment allowing the peremptory writ of *mandamus* was entered, and the cause is before us on the judgment so entered.

Appellants argue their three grounds of appeal under two points. *First.* Where there is an appeal provided by statute (*R. S.* 40:55–42), or where the legal right is not clear the writ of *mandamus* should be denied, and that respondent's remedy, if any, was by *certiorari*. *Second.* The owner of a non-conforming use may continue some but may not alter, remodel, modify or enlarge the use or structure.

We shall consider these points in inverse order.

*Second Point.* It is now no longer open to question that the spirit underlying the Zoning Act (*R. S.* 40:55–30, *et seq.*), anent the right to continue a non-conforming structure and the use or uses made thereof, save that the structure may be restored or repaired in the event of a partial destruction thereof (*R. S.* 40:55–48), is to restrict rather than to increase any non-conforming use. This same spirit must necessarily underlie the zoning ordinance of the city. The authoritative standard upon which this spirit may be given force and effect is that the non-conforming use must be a continuance of the same use. It must be a continuance of the same use made of the property at the time of the passage of the ordinance.

In short, the non-conforming use must be the same before and after the passage of the zoning ordinance. *Burmore* v. *Smith*, 124 *N. J. L.* 541, 546, 547; 12 *Atl. Rep.* (*2d*) 353. But each zoning case stands upon its own facts. *Cook* v. *Board of Adjustment, Trenton*, 118 *N. J. L.* 372, 375; 193 *Atl. Rep.* 191; *Bianchi* v. *Morey*, 128 *N. J. L.* 219, 221; 24 *Atl. Rep.* (*2d*) 566; *National Lumber Products Co.* v. *Ponzio*, 133 *N. J. L.* 95, 97; 42 *Atl. Rep.* (*2d*) 753.

Appellants argue here as they did below that the proposed use of the premises is contrary to the provisions of *R. S.* 40:55–48 and sections 5, 12 and 13 of the City ordinance. It is apparent, so runs the argument, "that there will be a change in structure and in the manner of use." Will the contemplated change enlarge the existing structure? The answer is no. Thirty-five feet of the building fronting on Heller Parkway will be removed to widen the entrance to the interior court. The structures will therefore be decreased and not enlarged. The changes sought are to facilitate, by modernizing, the non-conforming uses which respondent had been making of her structures and premises at the time of the passage of the zoning ordinance. There is no proof, as already observed, to sustain the conclusions of the secretary of the Board of Adjustment that the proposed manner of use would increase the present hazards either to the residents or to children while passing to and from schools in the neighborhood.

We perceive nothing in principle to distinguish the instant case from the holding in the cases of *Bronston* v. *Plainfield*, 119 *N. J. L.* 139; 194 *Atl. Rep.* 809, and *Lion Building and Loan Association of Newark* v. *Plainfield*, 123 *N. J. L.* 610; 10 *Atl. Rep.* (*2d*) 473.

In the Bronston case, decided by the Supreme Court in 1937, the court held that the removal of a space 25 feet in depth from the first floor of the garage in order to install a drive-in service station would not constitute a structural alteration enlarging the building or changing the former use of the building.

In the Lion Building and Loan Association case, decided by the Supreme Court in 1940, the court held that the removal

of 30 feet from the front of the building to install a drive-in gasoline station would not enlarge the use of the land and set aside the refusal of a permit to accomplish the stated change.

Thus we have one holding which has been in our reports for about ten years and one for over six years. The legislature, legally charged with the knowledge of the construction thus placed upon our Zoning Act, did nothing to indicate its disapproval of that construction. *Cf. Young* v. *Civil Service Commission,* 127 *N. J. L.* 329; 22 *Atl. Rep.* (*2d*) 523. The contemporaneous construction so given to a law of the state for the time indicated is necessarily respected by us. *State* v. *Kelsey,* 44 *N. J. L.* 1; *Graves* v. *State,* 45 *Id.* 203; *affirmed, Id.* 347; *State* (*Commissioner of Banking and Insurance*) v. *Moresh,* 122 *Id.* 77; 3 *Atl. Rep.* (*2d*) 638; *Martini* v. *Civil Service Commission,* 129 *N. J. L.* 599, 603; 30 *Atl. Rep.* (*2d*) 569; *Cino* v. *Driscoll,* 130 *N. J. L.* 535, 540, 541; 34 *Atl. Rep.* (*2d*) 6.

The facts and applicable law are clear. The like holding in the Bronston and Lion Building and Loan Association cases is dispositive of the second point.

*First Point.* In light of our finding under the Second Point that the facts and applicable law are clear, it is equally clear to us that respondent was not obliged to appeal to the Board of Adjustment (*R. S.* 40:55–42) from appellant's refusal to issue her a permit before invoking the aid of the Supreme Court. *Cf. Losick* v. *Binda,* 102 *N. J. L.* 157; 130 *Atl. Rep.* 537; *Lutz* v. *Kaltenbach,* 102 *N. J. L.* 718; 131 *Atl. Rep.* 899; *Builders' Realty Co.* v. *Bigelow,* 102 *N. J. L.* 433; 131 *Atl. Rep.* 888; *Tzeses* v. *Barbahenn,* 125 *N. J. L.* 643; 7 *Atl. Rep.* (*2d*) 539. And our result would have been the same had respondent sought the relief by *certiorari.* The general rule requiring exhaustion of statutory remedy before appealing to the Supreme Court "is not an absolute one." For the general rule, as stated, "* * * is a rule of policy, convenience and discretion, rather than of law, particularly [since] prerogative powers of [the Supreme] court are protected from legislative changes." Thus whether the policy be "legislative" or "judicial," the Supreme Court intervenes

"in a proper case" without waiting for intermediate statutory remedies to be exhausted. *Conaway* v. *Atlantic City,* 107 *N. J. L.* 404, 408; 154 *Atl. Rep.* 6. *Cf. Redcay* v. *State Board of Education,* 128 *N. J. L.* 281; 25 *Atl. Rep.* (2d) 632.

The judgment under review is affirmed, with costs.

*For affirmance*—PARKER, PERSKIE, COLIE, EASTWOOD, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, McLEAN, JJ. 10.

*For reversal*—THE CHANCELLOR, DONGES, HEHER, WACHENFELD, JJ. 4.