692 P.2d 1331

**CITY OF LAS CRUCES, a New Mexico Municipal Corporation, Plaintiff-Appellee,**

v.

**Daniel HUERTA, Pastor of, and Apostolic Tabernacle de Las Cruces, Defendants-Appellants.**

No. 7538.

Court of Appeals of New Mexico.

Nov. 15, 1984.

Certiorari Denied Dec. 31, 1984.

Robert B. Kelley, Deputy City Atty., Las Cruces, for plaintiff-appellee.

Robert E. Robles, Evans & Robles, P.A., Las Cruces, Daniel Jon Loomis, Gibbs & Craze Co., L.P.A., Parma Heights, Ohio, for defendants-appellants.

## OPINION

DONNELLY, Chief Judge.

Appellant Apostolic Tabernacle de Las Cruces (Church) appeals from an order of the district court restraining it from operating a school on its church premises in Las Cruces contrary to the city zoning code. The Church raises three issues on appeal: (1) claim that the operation of a school is an incidental or accessory use of its church premises; (2) claim that the operation of a school is a preexisting use of its church premises; and (3) claim of violation of its first amendment rights. We affirm.

### FACTS

The Church owns a building on a tract of land on East Missouri Street in Las Cruces where it has conducted religious services for several years. At the time the Church originally constructed its building in 1979, the land in question was zoned as R–1 residential, which permitted the building of single-family dwellings, churches, and incidental church facilities when located on arterial streets.

After the building of the Church, the City enacted a new zoning code which became effective August 3, 1981. Under the new zoning plan the area in which the Church premises are located continued to be designated as an R–1 residential district, but the plan provided that private, public and parochial schools could be established in the district only if a special use permit was granted by the Planning and Zoning Commission after a public hearing. The plan also provided that churches in such areas required a special use permit.

The trial court found that the Church started construction of the school facilities and church offices at its church premises in May or June 1981, but did not commence actual classroom teaching on the premises until September 7, 1981. The trial court also found that the Church refused to apply for a Special Use Permit to operate its school within the R–1 residential zone. Testimony offered at trial indicated that the Church school is conducted daily, Monday through Friday, approximately 180 days per year. Classroom instruction is not limited to religious instruction, but includes other areas of study, including mathematics, English and science.

The City petitioned the district court for a restraining order enjoining the operation of the parochial school in violation of the 1981 zoning code. At the time of the hearing on the City's application for a restraining order, in September 1983, the Church had twenty-three pupils enrolled in its school. Daniel Huerta, pastor of the Church, testified that the school could accommodate approximately sixty pupils in its present facilities and had plans to expand its facilities to accommodate between 150 and 200 pupils.

Following the hearing, the court adopted findings of fact and conclusions of law and issued an order enjoining the operation of a school on the existing Church premises. The trial court found that the operation of the school was a more intensive use than a church, that the conduct of the school on the premises "unduly increases the level of noise in the immediate vicinity, disturbing the peace and quiet of the neighborhood," "creates, or may create a safety hazard," and that the conduct and operation of the parochial school did not commence until

after the effective date of the 1981 zoning code. The court further found that although the Church has a right to continue operating as a church at its present location, the operation of a parochial school after the effective date of the new zoning ordinance was illegal and could not be continued without the issuance of a special use permit by the City.

## I. CLAIM OF ACCESSORY AND PREEXISTING USE

We discuss the Church's first and second points jointly.

The Church contends that the conduct of a parochial school is a subordinate part and incidental to its primary use of the premises as a church. Specifically, the Church argues that the school is an accessory, incidental, or auxiliary use of its principal or main use of the Church for religious purposes. The Church argues that an "accessory" or "incidental" use is necessarily encompassed within the parameters of the primary use of its Church premises.

The Church argues, in effect, that its right to conduct church operations, which is an unchallenged non-conforming use under the 1981 Code, carries with it a right to conduct accessory activities. The City notes that under the 1981 Code, both churches and schools are special uses. *See* §§ 6.1A–3 and 6.1A–4. Under these circumstances, the City claims the Church's argument fails unless the school represents a non-conforming use. We assume, without deciding, that the Church is entitled to conduct some uses accessory to its operation as a church, by virtue of its right to continue operating as a church under the 1981 Code.

■ The 1981 Zoning Code adopted by the City of Las Cruces provided that "[a]ccessory uses which are incidental to and customarily found within the R–1 District are also permitted." "An accessory, incidental or auxiliary use is one which is dependent on or pertains to the principal or main use, and which may be considered an integral part of the primary use." 8 E. McQuillin, *Municipal Corporations* § 25.-125 at 377 (3d ed. 1983) (footnotes omitted). We recognize, as have other courts, that the right to establish and maintain a religious use includes the right to establish and maintain accessory uses. *See* Annot., 11 A.L.R.4th 1084 (1982). We adopt the rule articulated in *Damascus Community Church v. Clackamas County*, 45 Or.App. 1065, 1071, 610 P.2d 273, 276 (1980), *appeal dismissed*, 450 U.S. 902, 101 S.Ct. 1336, 67 L.Ed.2d 326 (1981), that while *"certain types* of ancillary uses 'usually connected with a church' are *implicitly* encompassed by * * * permits for churches * * *' it is clear that full-time parochial schools are *not* among the uses which could be regarded as implicit * * * for a church under this ordinance." [Emphasis in original.]

■ While it is clear that the parameters of religious use of a church building are not limited to actual prayer or worship services, a factual issue may exist under a zoning ordinance when a new or enlarged use of the church premises is implemented. The use of the property must in fact exist prior to the effective date of a zoning ordinance in order to qualify as a lawful non-conforming use. A mere intention or an unimplemented usage is insufficient to create a prior existing use. *Board of Clark County Commissioners v. Excite Corp.*, 98 Nev. 153, 643 P.2d 1209 (1982); *Anderson v. Island County*, 81 Wash.2d 312, 501 P.2d 594 (1972).

As observed in 8A E. McQuillin, *Municipal Corporations* § 25.188 at 34 (3d ed. 1976):

The general rule is that actual use as distinguished from merely contemplated use when a zoning restriction opposed to it becomes effective is essential to its protection as a lawful nonconforming use. * * * [I]t is not the present intention to put property to a future use but the present use of the property which must be the criterion * * * [M]ere in-

tentions or plans at the time a zoning ordinance becomes effective to use particular land or dwellings for a certain use does not entitle one to that use in contravention of the ordinance. * * *

A purchase of property with an intention to use it for a particular purpose does not in itself give a right to use it for that purpose as against a subsequent zoning ordinance or restriction. [Footnotes omitted.]

■ It is essential to the establishment of the right to a lawful non-conforming use that the use was commenced before the enactment of a zoning ordinance restricting such use. The use must be the same both before and after the zoning law becomes effective. *Lane v. Bigelow*, 135 N.J.L. 195, 50 A.2d 638 (1947); *Parks v. Board of County Commissioners of Tillamook County*, 11 Or.App. 177, 501 P.2d 85 (1972).

■ While a non-conforming use existing at the time of the effective date of a zoning ordinance may be continued, the burden of proof is upon the party asserting the existence of the non-conforming use to establish the legality and existence of the actual use at the time of the enactment of a zoning ordinance affecting such use. *Texas National Theatres Inc. v. City of Albuquerque*, 97 N.M. 282, 639 P.2d 569 (1982); *Melton v. City of San Pablo*, 61 Cal.Rptr. 29, 252 Cal.App.2d 794 (1967). Whether a use is non-conforming is generally a question of fact. *Application of Brandt*, 15 Wis.2d 6, 112 N.W.2d 157 (1961). Each case must be decided on its own particular facts. *Vogl v. City of Baltimore*, 228 Md. 283, 179 A.2d 693 (1962).

■ The Church contends that it conducted religious services on its premises prior to the effective date of the 1981 city ordinance and has a right to continue its non-conforming use, including the operation of a parochial school despite the adoption and implementation of the new zoning plan. Whether the Church school can be classified as a preexisting use of the Church premises depends on whether the school was in use prior to the enactment of the 1981 zoning code. Reverend Daniel Huerta, the pastor of the Church, was questioned about when the Church school first began. He stated that at the time the Church was initially built he had the "intention" of conducting a church school in the church structure, but that the church school program in fact began in September 1981:

Q: [Y]ou actually didn't start * * * teaching * * * until September of 1981 has been your testimony; is that correct?

A: We started our teaching ministry, teaching the children, in that month, yes.

Reverend Huerta also testified that in early 1981 the Church began building cubicles in the Church to be used as classrooms but did not obtain a building permit from the City. Reverend Joseph Garland, a consultant for a state Christian education certification program (ACE), testified that ACE approval of the Church's religious education program was granted some time in the middle or latter part of August 1981. However, the trial court found that the operation of the parochial school by the Church did not actually commence until after the effective date of the 1981 zoning code. This finding is supported by substantial evidence. The trial court also found that the operation of the school was an unlawful non-conforming use under the 1981 code and was prohibited unless a special use permit was obtained. No issue has been asserted that the operation of the school constitutes an enlargement of a prior lawful non-conforming use.

The trial court did not err in finding that the use of the Church for parochial school purposes was an impermissible non-conforming use, not incidental to the use of the premises as a church. *See Seward Chapel, Inc. v. City of Seward*, 655 P.2d 1293 (Alaska 1982).

## II. FREE EXERCISE OF RELIGION

The Church asserts that its right to use its property for school purposes is protect-

ed by the Free Exercise Clause of the first amendment of the United States Constitution and by Article II, Section 11 of the New Mexico Constitution. Reverend Huerta contends that the furnishing of a Christian education is an inherent part of the denomination's religious tenets.

■ Under both the federal and state constitutions, the right to the free exercise of religion is a cherished and protected right. As important as these rights are, however, "[r]ights protected by the First Amendment are not immune from governmental regulation; the city may impose reasonable restrictions on the time, place, and manner in which such rights are exercised." *Seward Chapel Inc.* at 1300.

Courts in other jurisdictions have generally upheld the right of a municipality to impose rational and reasonable zoning ordinances upon churches and religious organizations. *See Allendale Congregation of Jehovah's Witnesses v. Grosman*, 30 N.J. 273, 152 A.2d 569 (1959), *appeal dismissed*, 361 U.S. 536, 80 S.Ct. 587, 4 L.Ed.2d 538 (1960) (holding that the refusal to issue a permit to construct a church did not violate free exercise of religion where church could not comply with parking regulations); *Damascus Community Church v. Clackamas County* (holding no violation of first amendment in denying a church under a zoning ordinance the right to operate a parochial school in a church building); *American Communications Association, C.I.O. v. Douds*, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925, *reh'g denied*, 339 U.S. 990, 70 S.Ct. 1017, 94 L.Ed. 1391 (1950) (noting that the Supreme Court had dismissed for want of substantiality an appeal involving a claim by a church that its First Amendment rights were violated by a city ordinance precluding the building of churches in certain residential areas); *Seward Chapel, Inc. v. City of Seward* (holding city could exclude a parochial school from a specific residential zone).

In *Abram v. City of Fayetteville*, 281 Ark. 63, 661 S.W.2d 371 (1983), the court considered a claim similar to that raised by the Church in the present case. There, appellants asserted that both the federal and state constitutional guarantees of religious freedom encompassed the right to operate a parochial school as a tenet of their religious beliefs regardless of municipal zoning restrictions. Appellant also argued that operating a parochial school is an integral function of the exercise of church activities and that it is not within the province of a municipality to restrict those activities. The Supreme Court of Arkansas held that the municipal zoning ordinance, requiring the issuance of a conditional use permit for a church did "not automatically authorize the operation of a full-time parochial school." *Id.*, 661 S.W.2d at 373; *see also* Annot., 62 A.L.R.3d 197 (1975); Annot., 64 A.L.R.3d 1087 (1975).

In the present case, the trial court found that the operation of a church school in an R–1 residential area would create a safety hazard, disturb the peace and quiet of the neighborhood, and unduly increase the noise level in the neighborhood. The Church has not challenged the trial court's finding about the existence or creation of a safety hazard.

■ Under these facts, the 1981 municipal zoning ordinance requiring the issuance of a special use permit as a prerequisite to the operation of a parochial school does not impose an unreasonable restriction upon the Church's free exercise of religion. Nor does the ordinance preclude the Church from operating a parochial school at another location compatible with the surrounding area and uses. The zoning ordinance as applied to the Church does not impose an infringement upon its members' religious beliefs. *See Damascus Community Church v. Clackamas County.* The ordinance in question as it applies to the Church constitutes a reasonable exercise of the police power of the municipality.

The judgment of the district court is affirmed.

IT IS SO ORDERED.

HENDLEY and MINZNER, JJ., concur.