This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**HOMER J. AVALOS,**

Petitioner-Appellant.

v.                                                                    **NO. 30,611**

**NEW MEXICO COUNSELING and**
**THERAPY PRACTICE BOARD,**

Respondent-Appellee,

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Barbara J. Vigil, District Judge**

Brennan & Sullivan, P.A.
Joan M. Waters
Michael W. Brennan
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Mona N. Valicenti, Assistant Attorney General
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**FRY, Judge.**

The New Mexico Counseling and Therapy Practice Board (Board) revoked Appellant Homer Avalos's license to practice as a clinical mental health counselor after it determined that Avalos had engaged in unprofessional conduct based on an incident involving a sixteen-year-old female client. Avalos appealed the license revocation to the district court, which affirmed the Board's decision. We granted Avalos's petition for writ of certiorari to review the district court's decision. We affirm.

**BACKGROUND**

Avalos was licensed by the Board to practice as a clinical mental health counselor and provided counseling and therapy services from his home office in Chaparral, New Mexico. In October 2007, the Board received a formal complaint that Avalos had allegedly inappropriately touched and sexually assaulted a sixteen-year-old female client, Victim, while she was at his home office for a urinalysis test. Based on the complaint, the Board issued a Notice of Contemplated Action (NCA) to Avalos alleging that his conduct had violated the Counseling and Therapy Practice Act as well as the code of ethics governing counselors and therapists, which justified the suspension or revocation of his professional license. NMSA 1978, § 61-9A-26(A)(4) (2005); 16.27.18 NMAC (3-20-95). Attached to the NCA were copies of the complaint and incident reports from the local sheriff's department that was dispatched

to Avalos's home after Victim's family called 911 on the night of the incident. In addition to the factual details provided in these attached documents, the NCA itself stated the following as the factual basis underlying the allegations:

> According to [the] [i]ncident [r]eport, on [September] 25, 2007, the Otero County Sheriff's Department was dispatched to [Avalos's residence] in reference to a criminal sexual contact. The [i]ncident [r]eport indicated that a 16 year [old] female reported that she went to the business/residence of [Avalos] in order to submit to a urine test. The female alleged that while at [Avalos's] business/residence, [Avalos] touched her inappropriately and sexually assaulted her. The [i]ncident [r]eport also indicated that the alleged victim's sister was a witness to the incident. According to the alleged victim at the time of the incident [Avalos's] breath smelled of alcohol.

The NCA sought to impose discipline in accordance with Section 61-9A-26(A)(4) of the Counseling and Therapy Practice Act , which authorizes the Board to suspend, deny, or revoke a counselor's license if the licensee is "guilty of unprofessional or unethical conduct," and with the code of ethics governing counselors and therapists. Specifically, the NCA sought to impose discipline pursuant to four administrative provisions: 16.27.18.16(B)(1) NMAC (7-1-04), which prohibits licensees from engaging in "sexual intercourse, contact[,] or other physical intimacies" with a client to whom the licensee has rendered counseling or therapy within the previous 60 months; 16.27.18.16(D) NMAC, which prohibits licensees from undertaking or continuing a professional relationship with a client when the licensee is "impaired due to mental, emotional, physiological, or substance abuse conditions";

3

16.27.18.16(A) NMAC, which prohibits licensees from misrepresenting their credentials; and 16.27.18.12 NMAC (6-15-01), which generally concerns a licensee's obligation to act with professional integrity and competence as defined by law.

**Procedural History**

The Uniform Licensing Act (ULA), NMSA 1978, §§ 61-1-1 to -31 (1957, as amended through 2003), provides the procedures that a professional licensing board must follow when initiating actions against a licensee. Under the ULA, a licensee must be served with an NCA and given an opportunity to have a hearing before a board can take any action resulting in the suspension or revocation of a license. Sections 61-1-3, -4. The ULA requires that hearings be conducted "either by the board or, at the election of the board, by a hearing officer who may be a member or employee of the board or any other person designated by the board in its discretion." Section 61-1-7(A).

In this case, Avalos requested a formal hearing, and the Board designated a hearing officer to preside over the hearing. At the start of the hearing, the Board's administrative prosecutor informed the hearing officer that the Board was dismissing the charges based on alleged misrepresentation of credentials. The hearing proceeded as to all remaining charges in the NCA. Over the course of the two-day hearing, the hearing officer heard testimony from several individuals including Victim's sister and

mother, Deputy Jason Green and Detective Eduardo Medrano from the sheriff's department, the SANE nurse, and Board member Michael Maestas. Because Victim was unable to be present at the hearing, the hearing officer admitted Victim's deposition testimony. Avalos and his office secretary also testified at the hearing.

Following the hearing, the hearing officer submitted his report to the Board. The report consisted primarily of a summary of the procedural aspects of the hearing as well as a detailed recitation of the testimony of each witness. The report ended with the hearing officer's conclusions and recommendations. The hearing officer wrote that it was his "impression that the evidence of sexual touching is insufficient to reach a preponderance in this case." He found, however, "that there is a preponderance of proof that [Avalos's] treatment and intervention here deviated from that expected of a licensee in accord [with 16.27.18.12 NMAC]." With regard to this conclusion, the hearing officer noted Avalos's use of questionable techniques in his treatment of Victim, Avalos's act of "allowing home/office visits by the teenage girls as he was alone late at night while he was under the influence of either alcohol and/or prescription drugs," and Avalos's "poor choices in employing [Victim's sister]." Based on the foregoing, the hearing officer recommended that Avalos's license be suspended for one year followed by two years' supervised probation, and that he undergo alcohol/drug treatment evaluation.

The hearing officer's report was filed on October 9, 2009. A few weeks later, the hearing officer supplemented his report with an addendum. The addendum consisted entirely of findings of fact made by the hearing officer. We note that there were no findings of fact provided in the hearing officer's initial report.

The Board convened on November 3, 2009, to consider Avalos's case. In its final order, the Board adopted the hearing officer's report and the findings of fact in the addendum, with the exception of one finding that the Board modified. The Board then made several additional findings of fact. The Board concluded that there was a "preponderance of the evidence to support the allegations" made by Victim, that Avalos's conduct "violated applicable statutes and administrative regulations governing the practice of counseling," that there was a preponderance of the evidence to show that Avalos "failed to show professional judgment in his interaction" with Victim and her sister, and that there was sufficient evidence that Avalos "failed to recognize the boundaries in his scope of practice." The Board decided to permanently revoke Avalos's license and assessed a fine plus costs to be paid by Avalos.

Avalos appealed the Board's final order to the district court pursuant to Rule 1-074 NMRA and Section 61-1-19 of the ULA, raising several arguments as to the propriety of the Board's actions in revoking his professional license. The district court rejected Avalos's arguments, determining that the Board's decision was

"supported by substantial evidence in the record," that the Board acted "within its scope of authority and in accordance with law," and that Avalos was "afforded all due process [required] under the [ULA]." We granted Avalos's petition for writ of certiorari to review the district court's decision pursuant to Rule 12-505 NMRA.

**STANDARD OF REVIEW**

In an administrative appeal of this type, we "conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806. Applying the same standard of review that the district court applied in this case, we determine whether the Board's decision was arbitrary and capricious, not supported by substantial evidence, or otherwise not in accordance with law. *See* § 61-1-17 (providing that a person entitled to a hearing under the ULA may obtain review of an adverse board decision pursuant to NMSA 1978, Section 39-3-1.1 (1999), which grants district courts appellate jurisdiction to review agency decisions); *see* § 39-3-1.1(D) (stating that a district court may set aside, reverse, or remand a board's final order if it determines that: "(1) the agency acted fraudulently, arbitrarily, or capriciously; (2) the final decision was not supported by substantial evidence; or (3) the agency did not act in accordance with law").

7

**DISCUSSION**

Avalos raises six issues on appeal, arguing that (1) the Board improperly reweighed the evidence and entered findings of fact specifically rejected by the hearing officer; (2) the Board failed to familiarize itself with the record prior to taking its final action; (3) the Board failed to comply with the Open Meetings Act, NMSA 1978, § 10-15-1 to -4 (1974, as amended through 2009); (4) there was insufficient evidence to support findings that Avalos undertook a professional relationship while under the influence of alcohol or drugs; (5) there were procedural due process violations; and (6) there were improper ex parte communications between the hearing officer and the Board.

**Whether the Board's Final Order Violated the ULA**

Avalos's primary argument on appeal is that the Board, after having delegated the conduct of the hearing to a hearing officer, was prohibited from reweighing the evidence and entering findings of fact specifically rejected by the hearing officer. We are not persuaded by Avalos's argument for two reasons.

First, we conclude that because the Board is responsible for issuing the final administrative decision regarding license revocations, it is not bound by the hearing officer's findings of fact under the provisions of the ULA. In administrative adjudications where a board appoints a hearing officer to preside over the hearing, the

8

ULA specifies that a hearing officer is only required to submit findings of fact in a report to the board. Section 61-1-7(A) (providing that "[a] hearing officer shall, within thirty days after any hearing, submit to the board a report setting forth his findings of fact"). After the hearing officer's report is submitted to the board, it is the board that is charged with the task of rendering a decision and providing the findings of fact and conclusions of law underlying that decision. *See* Section 61-1-13(A) ("After a hearing has been completed, the members of the board shall proceed to consider the case and as soon as practicable shall render their decision[.]"); *see also* Section 61-1-16 ("The decision of the board shall contain findings of fact made by the board; conclusions of law reached by the board; the order of the board based upon these findings of fact and conclusions of law; and a statement informing the applicant or licensee of his right to judicial review and the time within which such review must be sought.").

Thus, under the language of the ULA, it is clear that the board, and not the hearing officer, is the ultimate decision maker with respect to agency adjudications. The board has the express authority to enter findings of fact and is not bound by the hearing officer's findings of fact. Moreover, there is no statutory basis within the ULA for a hearing officer to provide recommendations to the board and, consequently, there is no basis for the board to give deference to the hearing officer's

recommendations. However, we recognize the role of the hearing officer as the individual who hears the evidence firsthand and observes the demeanor of the witnesses as a means of assessing credibility. Thus, although the board is not bound by the hearing officer's findings, the board has the responsibility to familiarize itself with the record, including the hearing officer's findings and to provide a reasoned basis for its final findings of fact and conclusions of law, especially where it has made findings concerning witness credibility. Section 61-1-16; *see also Bd. of Educ. of Alamogordo Pub. Sch. Dist. No. 1 v. Jennings*, 98 N.M. 602, 605, 651 P.2d 1037, 1040 (Ct. App. 1982) (holding that an agency is not bound by the recommendations of its hearing officer, even on points turning on the credibility of witnesses), *overruled on other grounds by Bd. of Educ. of Melrose Mun. Sch. v. N.M. State Bd. of Educ.*, 106 N.M. 129, 740 P.2d 123 (Ct. App. 1987); *see id.* at 130, 740 P.2d at 125 (recognizing that an agency may not arrive at a conclusion contrary to hearing examiner where credibility is at issue without reviewing the entire record).

Avalos argues that even if the Board had the authority to issue its own findings of fact, it is not allowed to ignore the hearing officer's findings of fact and make its own substitute findings of fact. Avalos argues that we should construe the role of the Board here in the same manner as that of a disciplinary board overseeing proceedings involving lawyers. There is no merit to Avalos's argument based on our

determination that the Board has the sole authority to render a decision under the ULA, and that decision will be upheld so long as it is not arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law.

Our second basis for rejecting Avalos's argument is that his briefing misconstrues the actions of the Board in this case with respect to the hearing officer's findings. After careful review of the record, we are unable to conclude that the Board rejected the findings of fact entered by the hearing officer. As the district court noted in its ruling, the Board's final order adopted all of the hearing officer's findings of fact, with the exception of one finding, which the Board modified. The Board then entered additional findings of fact and, based on our discussion above, it had the authority to do so under the ULA.

Avalos argues that the hearing officer failed to find that inappropriate conduct occurred while Victim was at his home on the evening of the incident. However, the hearing officer entered specific findings of fact that Victim and her sister went to Avalos's home twice in the late evening hours of that night, that Avalos performed a urinalysis test and stress test on Victim using bio feedback goggles, that Avalos asked Victim questions and touched her while she was in the exam room with him, that Victim's sister opened the door to the exam room and saw Avalos touching her sister, and that Victim's sister observed that Avalos smelled of alcohol. The Board's

11

additional findings were consistent with these findings entered by the hearing officer. Even if that were not the case, the district court determined that the Board's findings were supported by substantial evidence, a determination that we affirm later in this opinion to the extent that Avalos challenges it. Because the Board had the authority to enter findings of fact in this case and was responsible for issuing the final decision with respect to Avalos's license, we conclude that the Board's actions were not improper.

We also reject Avalos's argument that the Board failed to familiarize itself with the record prior to entering its final order. Avalos contends that *Board of Education of Melrose Municipal Schools* requires that an agency review all evidence, including transcripts of the hearing, before it rejects the hearing officer's factual findings. 106 N.M. at 130, 740 P.2d at 125. However, because we have already determined that is not the factual scenario presented in this case, we conclude that *Melrose* is inapplicable here. In addition, although the Board's counsel stated during appellate arguments before the district court that the Board did not review the hearing testimony during the meeting at which it deliberated and voted to revoke Avalos's license, we are unable to ignore the Board's statement in the final order that it "reviewed all [of] the evidence taken at the hearing" and "familiarized itself with the record" before reaching its decision. This was adequate to meet the requirements of the ULA, which

12

requires that all members of the Board who were not present throughout the hearing to "familiarize themselves with the record, including the hearing officer's report, before participating in the decision." Section 61-1-13(A). Even if we were to give weight to the statement by the Board's counsel, there is nothing in the record to indicate that the members of the Board did not each review the evidence, including the hearing testimony, prior to the meeting.

Moreover, we indulge a presumption in the regularity of the Board's actions. *See State ex rel. Reynolds v. Aamodt*, 111 N.M. 4, 6, 800 P.2d 1061, 1063 (1990) ("On review of the acts or orders of administrative bodies, the courts will presume, among other things, that the administrative action is correct and that the orders and decisions of the administrative body are valid and reasonable; presumptions will not be indulged against the regularity of the administrative agency's action." (internal quotation marks and citation omitted)). We conclude that the Board's final order complied with the requirements of the ULA.

**Open Meetings Act**

Avalos contends that the Board's meeting on November 3, 2009, at which the Board voted to revoke Avalos's license, failed to comply with the Open Meetings Act. Avalos's primary argument is that neither he nor his counsel were given individual notice of the Board's meeting.

13

It is well established that "[p]rocedural due process requires notice and an opportunity to be heard prior to a deprivation of a protected liberty or property interest" such as a license to practice a profession. *Mills v. N.M. State Bd. of Psychologist Exam'rs*, 1997-NMSC-028, ¶¶ 13-15, 123 N.M. 421, 941 P.2d 502. The ULA specifically provides that individuals whose licenses are subject to revocation are entitled to notice through the issuance of an NCA and an opportunity to be heard. Sections 61-1-3, -4(D). All hearings under the ULA are required to be open to the public, although the Board or hearing officer may elect to hold a closed hearing under limited circumstances. Section 61-1-7(B). With regard to specific hearing requirements, the ULA provides that a licensee shall be afforded the right to representation by counsel, to present evidence, to examine all opposing witnesses, take depositions, and seek discovery of relevant evidence. Section 61-1-8. Following the hearing, a quorum of the Board is required to render a decision containing specific content and to provide notice of the decision to the licensee either personally or by certified mail. Sections 61-1-5, -13, -15.

In the present case, it is undisputed that Avalos received notice of the allegations against him in the NCA and that he was represented by legal counsel at the hearing, where he had an opportunity to present evidence and examine opposing witnesses before a hearing officer. Thus, it is readily apparent that there was no

procedural due process violation under the ULA at either the initial notice or hearing stage of the administrative proceedings against Avalos. *See Mills*, 1997-NMSC-028, ¶ 14 (noting that the specific requirements of procedural due process depend on the facts of each case and can "encompass any number of the following components: (1) notice of the basis for the governmental action[,] (2) a neutral decision maker[,] (3) the opportunity to orally present a case[,] (4) the opportunity to present evidence and witnesses[,] (5) the opportunity to cross-examine witnesses[,] (6) the right to have an attorney present at the hearing[,] and (7) a decision based on the evidence presented at the hearing accompanied by an explanation of the decision").

On appeal, Avalos challenges the sufficiency of the notice issued by the Board with respect to the final stage of the administrative proceedings, the November 2009 meeting at which the Board voted to revoke his license. He contends that the Board failed to comply with the Open Meetings Act by not providing him with individual notice of this meeting. The Board does not dispute that it did not provide individual notice to Avalos of the November meeting; however, it argues that the publication notice it provided sufficiently complied with the Open Meetings Act. We agree with the Board that there was no violation of the Open Meetings Act.

The Open Meetings Act requires all final actions on the revocation of a license to be taken at an open meeting by a quorum of the board. Section 10-15-1(D); Section

15

10-15-1(H)(1). The Open Meetings Act requires that the meetings be held "only after reasonable notice to the *public*" is given. Section 10-15-1(D) (emphasis added). In this case, the Board published notice of the meeting in a newspaper of general circulation twelve days prior to the meeting. We conclude that this notice sufficiently complied with Section 10-15-1(D). Avalos had already been afforded notice and an opportunity to be heard based on the requirements of the ULA, and we conclude that there was no additional notice requirement based on the Open Meetings Act.

To the extent that Avalos argues that his inability to attend the Board's final meeting prevented him from confirming whether the Board conducted the meeting in compliance with the Open Meetings Act, we are not persuaded. Under the Open Meetings Act, we apply a presumption that the Board held the meeting in accordance with its requirements. Section 10-15-3(A). Moreover, although Avalos raises arguments regarding the propriety of the Board's actions, there is no evidence in the record that he followed the proper procedure for asserting a violation of the Open Meetings Act. *See* § 10-15-3(B) (requiring that an individual seeking enforcement of the Open Meetings Act in the district court first provide "written notice of the claimed violation to the public body and that the public body has denied or not acted on the claim within fifteen days of receiving it"). We therefore decline to address these issues.

**Substantial Evidence**

Avalos argues that there was insufficient evidence to support the Board's decision to the extent that the decision was based on findings that he was impaired by drugs or alcohol during the alleged incident with Victim. Avalos essentially contends that there was no evidence to support the NCA charge that Avalos violated 16.27.18.16(D) NMAC, which prohibits licensees from undertaking or continuing a professional relationship with a client when the licensee is "impaired due to mental, emotional, physiological, or substance abuse conditions."

Substantial evidence supporting an administrative agency's final action is "evidence that a reasonable mind would regard as adequate to support a conclusion." *Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers,* 1998-NMSC-020, ¶ 17, 125 N.M. 401, 962 P.2d 1236. In conducting our review, we review the whole record, considering both favorable and unfavorable evidence in the light most favorable to the Board's decision. *See Romero v. Bd. of Cnty. Comm'rs*, 2007-NMCA-004, ¶ 12, 140 N.M. 848, 149 P.3d 945; *see also Grine v. Peabody Natural Res.,* 2006-NMSC-031, ¶ 28, 140 N.M. 30, 139 P.3d 190. We do not substitute our judgment for that of the agency, and "we only evaluate whether the record supports the result reached, not whether a different result could have been reached." *Romero*, 2007-NMCA-004, ¶ 12 (internal quotation marks and citation omitted).

17

Avalos's challenge to the sufficiency of the evidence centers around the hearing officer's report, and he contends that the hearing officer entered no factual findings that Avalos was impaired at the time he saw Victim on September 25, 2007. Our review on appeal, however, is concerned with the factual findings entered by the decision-making entity in this case, which is the Board. Although we consider the hearing officer's report during our whole record review of the Board's factual findings, the question ultimately is whether there was sufficient evidence to support the Board's findings regarding Avalos's impairment. In addition, Avalos's assertion that the hearing officer failed to enter findings concerning impairment is incorrect because the hearing officer specifically found the following: (1) "[Victim's sister] observed that [Avalos] smelled of alcohol" while he was in the exam room with Victim, (2) Deputy Green observed Avalos "to be nervous and oblivious to what was going on around him" and noted "a strong odor of alcohol emitting from [Avalos's] breath," and (3) Avalos "took a Vicodin sometime during the evening" of the incident. Moreover, the hearing officer included as one of his conclusions that Avalos "allowed professional boundaries to be blurred by . . . allowing home/office visits by the teenage girls [Victim and her sister] as he was alone at night while he was under the influence of either alcohol and/or prescription drugs."

Consistent with the hearing officer's report, the Board specifically found that Avalos's breath smelled of alcohol when Victim and her sister were at his home, that Deputy Green noticed "a strong odor of alcohol in the air and on [Avalos's] breath" when he was dispatched to Avalos's residence, and that Deputy Green "observed open bottles of Coors Light throughout the residence and noticed that [Avalos] was extremely nervous, fidgety with slurred speech and bloodshot eyes, appearing intoxicated."

Based on our review of the record, we conclude that there was sufficient evidence to support the Board's findings. Victim's videotaped deposition included testimony that she could smell alcohol on Avalos's breath when he was asking her questions during the alleged incident. Victim's sister testified that Avalos smelled like alcohol and that she could smell the alcohol as soon she walked in. In addition, Deputy Green testified that he smelled an odor of alcohol in the residence and from Avalos when he was dispatched to Avalos's residence following the incident, that there were open cans of beer in Avalos's residence, and that Avalos exhibited what he considered to be signs of intoxication including bloodshot eyes and slurred speech. All of the foregoing is evidence that a reasonable mind would regard as adequate to support a conclusion that Avalos undertook a professional relationship while

"impaired due to mental, emotional, physiological, or substance abuse conditions." *See* 16.27.18.16(D) NMAC.

**Alleged Procedural Due Process Violations**

Avalos contends that because the NCA did not include any allegations concerning dual relationships, his procedural due process rights were violated to the extent the Board determined that he engaged in a prohibited dual relationship with Victim's sister. *See* 16.27.18.16(B)(2) NMAC (prohibiting a licensee from entering into a "financial or other potentially exploitive relationship" with a former client to whom the licensee has rendered counseling within the previous 60 months). Avalos fails to point to any specific findings or conclusions made by the Board regarding dual relationships. Our review of the Board's final order confirms that the Board did not in fact enter any factual findings or conclusions concerning dual relationships or Avalos's alleged prior interactions with Victim's sister. Although dual-relationship testimony was elicited at the hearing and later included in the hearing officer's findings, the Board evidently did not rely on this testimony or findings in rendering its decision. Thus, we are unconvinced that there was a violation of Avalos's procedural due process rights on this basis. Furthermore, given the lack of any findings by the Board on this issue, we do not consider Avalos's subsequent argument that there was insufficient evidence to support findings concerning dual relationships.

20

Avalos also argues that the Board's final decision should be reversed to the extent it was based on conclusions that he made "poor choices" in intervening in prior incidents at Victim's home and used "questionable techniques" in his treatment of Victim. Avalos likewise argues that the NCA did not give him notice of the factual allegations underlying these conclusions and that there was no evidence that Avalos violated any statute or rule in his treatment practices. Initially, we note that the conclusions Avalos refers to were made in the hearing officer's report, not in the Board's final order. The Board did, however, enter findings concerning a urinalysis test and stress release therapy performed on Victim by Avalos, during which the improper sexual contact occurred, as well as a previous incident where Avalos went to Victim's residence and intervened in a dispute involving Victim's boyfriend and her family. We construe Avalos's general argument to be that the Board failed to provide him of adequate notice in the NCA of allegations concerning his treatment practices and that there was insufficient evidence showing that his practice methods violated any applicable statutes or administrative regulations governing the practice of counseling.

To the extent that Avalos argues that he was not given proper notice in the NCA of allegations concerning his treatment practices, we are not persuaded. The ULA provides that an NCA shall describe the "general nature of the evidence" that, if not

21

rebutted or explained, would justify the Board in taking the contemplated action. Section 61-1-4(D). The NCA "serves the same function as a complaint in a civil case, affording notice to the party against whom relief is sought of the facts alleged to justify the relief, but not going into extensive evidentiary detail in support of those facts." *Weiss v. N.M. Bd. of Dentistry*, 110 N.M. 574, 581, 798 P.2d 175, 182 (1990); *see Oden v. N.M. Regulation & Licensing Dep't*, 1996-NMSC-022, ¶ 15, 121 N.M. 670, 916 P.2d 1337 (referring to notice pleading requirements of the NCA).

In this case, the NCA described the general nature of allegations made by Victim and included as attachments the complaint filed with the state Regulations and Licensing Department as well as three incident reports filed by officers with the Otero County Sheriff's Department. The NCA also specified the administrative regulations that Avalos had allegedly violated, all of which touched on requirements that licensees behave with professional competence.

We conclude that the NCA was sufficient to apprise Avalos of the nature of the allegations against him. Given the detailed fact-specific nature of the attachments, Avalos was aware that the allegations of improper sexual contact arose during a urinalysis test and stress therapy performed by him on Victim at his home office in the late evening hours of September 25, 2007. Avalos was thus given adequate notice through the NCA that he might be questioned at the hearing regarding his treatment

practices on the evening of the incident. *See N.M. State Bd. of Psychologist Exam'rs v. Land*, 2003-NMCA-034, ¶¶ 37-38, 133 N.M. 362, 62 P.3d 1244 (holding that adequate notice was provided to psychologist where the NCA described the general nature of the allegations and cited to applicable board rules and regulations because this information afforded the psychologist sufficient notice that she might be asked questions at the hearing regarding her treatment practices); *see also Oden*, 1996-NMSC-022, ¶ 15 (determining that an NCA was sufficient to provide a licensee with notice where the licensee "knew the general nature of the proceedings against him, [which] is all that notice pleading requires").

Avalos's remaining argument also provides no basis for reversal of the Board's final order. We disagree with Avalos's contention that there was no evidence in the record that his treatment methods violated any statute or rule. Significantly, we note that Avalos did not raise a sufficiency argument with respect to the Board's conclusion that there was a preponderance of evidence to support Victim's allegations that there was improper sexual contact while she was at Avalos's home office for a urinalysis test and stress release therapy. Thus, there was evidence to support a conclusion that Avalos's conduct violated administrative regulations. *See* 16.27.18.16(B)(1) NMAC (prohibiting licensees from engaging in "sexual intercourse,

contact, or other physical intimacies" with a client to whom the licensee has rendered counseling or therapy within the previous 60 months).

**Ex Parte Communication**

Avalos argues that there were impermissible ex parte communications between the hearing officer and the Board's legal counsel during the time frame between the hearing officer's initial report and the filing of the addendum. Specifically, Avalos alleges that after the hearing officer filed his initial report, the Board contacted the state Regulation and Licensing Department (Department) and requested that the Department ask the hearing officer to amend his report. Avalos alleges that this communication led the hearing officer to file an addendum with findings of fact and that neither the hearing officer nor the Board notified Avalos's legal counsel of the communication.

We disagree with Avalos's contention that this was an impermissible ex parte communication. At the hearings before the district court, the Board's legal counsel explained that the Board contacted the Department because the hearing officer's initial report failed to include any findings of fact, which the hearing officer is required to submit to the Board under the ULA. *See* Section 61-1-7(A) (1993) (providing that "[a] hearing officer *shall*, within thirty days after any hearing, submit to the board a report setting forth his findings of fact") (emphasis added). Stated another way, the

24

hearing officer's initial report, despite its detailed recitation of the testimony from each witness, was inadequate as a matter of law due to the absence of findings of fact. Under these circumstances, we conclude that it was not inappropriate for the Board to contact the Department and request that the hearing officer submit his findings of fact.

Furthermore, Avalos has not alleged, nor is there any evidence in the record, that the communication between the Board and the Department concerned the merits of the adjudication. *See Colonias Dev. Council v. Rhino Envtl. Servs., Inc.*, 2003-NMCA-141, ¶¶ 42-43, 134 N.M. 637, 81 P.3d 580 (determining that there were no impermissible ex parte communications between an agency and its designated hearing officer where the communications concerned scheduling and administrative matters, and not the merits of the adjudication), *overruled on other grounds by* 2005-NMSC-024, 138 N.M. 133, 117 P.3d 939. We therefore decline to reverse the Board's final order on this basis.

**CONCLUSION**

For the foregoing reasons, we affirm the final order of the district court and uphold the Board's revocation of Avalos's license.

**IT IS SO ORDERED.**

25

 

                                                        **CYNTHIA A. FRY, Judge**

**WE CONCUR:**

**RODERICK T. KENNEDY, Judge**

**LINDA M. VANZI, Judge**