BRANDT, Appellant, v. PEWAUKEE TOWN BOARD, Respondent.

*October 30—November 28, 1961.*

8

For the appellant there were briefs by *Arthur G. Brandt* of Campbellsport, and *McLeod, Donohue & Colwin* of Fond du Lac, and oral argument by *Mr. Raymond R. Colwin* and *Mr. Brandt*.

For the respondent there was a brief and oral argument by *Harry E. Fryatt, Jr.,* of Waukesha.

BROWN, J. Certiorari. In 1938 the town of Pewaukee enacted a zoning ordinance which expressly recognizes the right of a property owner to continue an existing lawful use of his premises although such use does not conform with the provisions of the ordinance, but such nonconforming use shall not be expanded. Also, if such nonconforming use is discontinued for twelve consecutive months, future use of the premises must conform to the zone requirements. The ordinance gives the Town Board the power to grant permits for nonconforming uses for three years with further power to grant one-year renewals of the initial permit. Otherwise, the commercial mining of gravel is prohibited.

Appellant Brandt had a gravel pit on his farm and permitted other persons to take gravel from it. In 1957 he had opportunity to dispose of a substantial amount of gravel to one Henes who had a contract to deliver gravel to a highway-construction project. The chairman of the Town Board informed Henes that gravel could not be mined from Brandt's pit without a permit. Brandt and Henes collaborated in applying for such a permit and a three-year

permit was given Brandt by the Town Board. Brandt operated under it until near the end of the three years. In the meantime, Henes took less gravel than he had originally intended and neither Brandt nor Henes graded and made tidy the premises at the completion of the three-year period, as they had agreed with the Town Board to do and as the ordinance and special permit required. Just before the three years expired, Brandt applied to the Town Board for a renewal of his initial permit.

That board referred the application to the town planning commission, as the ordinance provides. The commission reported back that the renewal should be denied. The Town Board then denied the renewal, giving no reason. Sec. 4.05 of the ordinance provides, "Where renewal is not granted, the reasons for refusal shall be presented to the applicant in writing and made part of the records of the town." The ordinance, sec. 2.01, declares that "shall" is always mandatory, not permissive. The failure of the board to give the applicant the reasons for the refusal and the failure to make a record of the reasons violate the express terms of the ordinance. The trial court recognized these violations but determined them to be immaterial. We cannot so regard them. If Brandt is to be deprived of a use of his property which he would otherwise legally enjoy, he is, at least, entitled to have the depriving body comply with the statutory procedure authorizing the deprivation.

Ordinance sec. XVIII specifies the creation of a board of appeals and gives to an aggrieved person a right to appeal to such board from any decision of "the administrative officer." Brandt attempted to appeal to this board the Town Board's decision denying renewal of his permit, but the board refused to take jurisdiction. In so doing, the Town Board was acting in its administrative capacity. It makes no difference that the decision is one by an administrative body or an administrative single officer. The administrative

decision is the subject of the grievance and the subject of the appeal. We think the board of appeals had jurisdiction under the ordinance and should have exercised it. This constitutes an additional failure to comply with that part of the ordinance relating to the renewal permits and the refusal to grant them.

Accordingly we consider that the procedure which resulted in the refusal to renew Brandt's permit violated the terms of the ordinance under which the town officials purported to act and the decision denying Brandt's application for a renewal permit was void. However, that conclusion does not, in itself, compel that a permit be issued, but presents a situation similar to that in an ordinary trial whereby because of error a verdict must be set aside. In such a case, the court ordinarily remands the cause for a new trial, unless the court may reach a decision as a matter of law.

Brandt contends that, as a matter of law, he has established a nonconforming commercial use of his gravel pit antedating the zoning ordinance and such use has not been discontinued. We need not here review the testimony bearing upon the prior use but it is clearly insufficient for this court to decide *as a matter of law* that Brandt had a continuous pre-existing, nonconforming use of a commercial gravel-mining industry on his premises. The determination of whether he did or did not is a question of fact for the trial court.

That court made no finding upon that question although the judgment recites: ". . . and having . . . handed down its [the court's] written decision holding that the Town Board had the right to deny said application for a renewal of the permit in that Leander Brandt did not have a nonconforming use prior to the adoption of the ordinance in question; . . ." The court's written decision to which its judgment refers did not so hold. This is what it said:

"Does the Town Board now have the right to deny said application for renewal of the permit on the ground that the petitioner had a nonconforming use prior to the adoption of the ordinance in question? The court is of the opinion this question must be answered in the negative."

This seems to us to be a clear statement by the trial court that the Town Board does not have the right to deny the application for renewal on this ground. However that may be, even if the Town Board did have a right to deny a renewal of the permit because Brandt did not have a prior nonconforming use, the board did not find Brandt lacked nonconforming prior use nor did it deny the application for that reason—or any reason.

The Town Board, of course, may consider the character of the pre-existing use because it is only when an applicant has no prior nonconforming use that he needs a permit to engage in nonconforming activity. But ultimately it is a fact for the trial court to determine whether a party has or has not the use which he alleges.

The trial court here made no finding on this matter. What it did was to find that Brandt's acceptance of a permit three years ago and his operation under it estopped him from showing now that he had had a prior nonconforming use all the time.

That was our own view when we decided *Schutt v. Kenosha* (1950), 258 Wis. 83, 44 N. W. (2d) 902. There, after a dealer took a license which permitted him to deliver milk, he attacked the licensing ordinances. We held that he could not attack the constitutionality of an important part of the ordinance while retaining its benefits. This is also the view of 8 McQuillin, Mun. Corp. (3d ed.), p. 723, sec. 25.291, cited by the trial court in the present action. However, after the decision in the *Schutt Case* the legislature, by ch. 20, Laws of 1951, amended sec. 269.56 (2), the declaratory-judgments statute, by adding to it:

"No party shall be denied the right to have declared the validity of any statute or municipal ordinance by virtue of the fact that he holds a license or permit under such statutes or ordinances."

Appellant challenges the validity of the ordinances requiring him, as an alleged prior nonconforming user, to have a permit as a condition of gravel mining, and sec. 269.56 (2), Stats., authorizes his right to make such challenge. We consider he is not estopped to show that his nonconforming use antedated the ordinances.

Although the trial court concluded that Brandt is estopped to show his nonconforming use, the court received all testimony offered on that subject. That court made no finding and the evidence is such that the appellate court cannot determine the fact as a matter of law. On this record the question is strictly one for the trier of the fact, namely the circuit court. Therefore there must be a remand for a determination of the fact. If it is determined that, at the time the ordinance was adopted, Brandt was exercising a nonconforming use to mine gravel commercially and had not discontinued the use thereafter, the questions relating to a permit are moot, because he can continue his operations without any permit. In determining this question the trier of the fact must scrutinize and compare the use as it existed before and after the adoption of the ordinance. The owner's right is to continue the use of property which has already been undertaken at the time when the zoning ordinance becomes operative; but he has no right to enlarge that right after that date. "Nonconforming uses are closely watched and limited and are not to be enlarged in derogation of the general scheme of the ordinance for the use of property." *Yorkville v. Fonk* (1958), 3 Wis. (2d) 371, 378, 88 N. W. (2d) 319.

If Brandt did not have, nor continue, such prior nonconforming right, the errors in the procedure of denying him a renewal become material and require new consideration of Brandt's application by the Town Board (and the board of appeals if necessary) with a scrupulous observance of the procedural requirements demanded by the ordinance.

*By .the Court.*—Judgment reversed. Cause remanded for future proceedings not inconsistent with this opinion.

CURRIE, J. (*dissenting in part*). At one time almost all of eastern Wisconsin was overrun by glaciers. As the glaciers melted and receded they left many large deposits of gravel in their wake, a large number of which lie fairly close to the surface of the soil. This situation is prevalent throughout the Kettle Moraine region in which a large part of Waukesha county lies. In recent years there has been a nationwide population movement toward rural suburban areas. Because of Waukesha county's nearness to the city of Milwaukee, it has proved particularly susceptible to this development and has undergone a tremendous upsurge in population. Consequently, there are many former agricultural areas in the county that have now been converted into attractive suburban-residence areas.

As such conversion has progressed, the governing bodies of affected municipalities have made use of their zoning power to guard against objectionable property uses which would be incompatible with the development of the area for residential purposes. This undoubtedly was the motivation of the Pewaukee Town Board in amending its zoning ordinance in 1957 to control gravel-mining operations in the town.

Under this 1957 amendment, issuance of permits for mining and commercial selling of gravel was authorized for periods not to exceed three years, provided both the plan-

ning commission and the Town Board, after public hearing, should find that no injury to the public welfare would result from such a commercial gravel-mining operation. An important provision of the amendment requires an applicant for a permit to submit a plan of restoration satisfactory to the town to insure that the area where the gravel mining is to be conducted will be "restored to a condition of practical usefulness and reasonable physical attractiveness." Furthermore, it provides that, as a condition to granting the permit, the applicant must enter into a binding agreement with the town to carry out such plan of restoration, and furnish a surety bond to insure his performance of this agreement. Thus, the amended ordinance was carefully drafted to guard against the contingency that the attractive landscape of the town may be permanently scarred with huge open gravel pits which would seriously hamper any development of the adjoining territory as a desirable residential area.

Brandt took the position in the circuit court that he was entitled to operate a commercial gravel pit on his land free from the provisions of the amended zoning ordinance because he had a prior nonconforming use which permitted him to do so. However, the evidence to establish such nonconforming use consisted only of the fact that, prior to 1957, Brandt had occasionally permitted neighboring farmers to remove gravel from his premises, and had charged them therefor. Moreover, neither Brandt nor his witnesses were able to establish a single instance in 1955 or 1956 in which Brandt sold any gravel.

The foregoing evidence requires that this court hold as a matter of law that there exists no prior nonconforming use by Brandt *to operate a commercial gravel pit* on his premises. To permit the trial court to find to the contrary on this evidence would clearly violate the rule, enunciated

in the majority opinion, that a prior nonconforming use may not be enlarged. The prior nonconforming use here, before 1955, was limited to occasionally permitting a neighbor to come in and remove a small truckload of gravel for a charge. This is a far cry from operating a commercial gravel pit. Furthermore, the evidence would justify a finding that even this limited use had been abandoned as a result of not occurring in the years 1955 and 1956.