COURT OF APPEALS
DECISION
DATED AND FILED

June 11, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1241**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CV88

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN EX REL. KRISTLE MAJCHRZAK AND ROBERT GLAU D/B/A KRISTLE KLR,

   PETITIONERS-APPELLANTS,

 V.

BAYFIELD COUNTY AND BAYFIELD COUNTY BOARD OF ADJUSTMENT,

   RESPONDENTS-RESPONDENTS.

APPEAL from an order of the circuit court for Bayfield County: J. MICHAEL BITNEY, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kristle Majchrzak and Robert Glau, d/b/a Kristle KLR ("Kristle"), appeal an order affirming the Bayfield County Board of Adjustment's ("Board") decision to deny Kristle's application for a conditional use permit ("CUP"). On certiorari review, we reject Kristle's arguments and affirm.

## BACKGROUND

¶2 Kristle submitted a CUP application to the Bayfield County Planning and Zoning Committee ("Committee") seeking permission to construct a "water collecting facility" on Kristle's property "where tanker trucks w[ould] fill from [two] underground tanks supplied by an artesian well and the water w[ould] then be taken off[-]site for bottling and sale." The listed "conditional use" on the application was "irrigation facility." Prior to Kristle's CUP application, the Department of Natural Resources (DNR) issued Kristle a "well notification," permitting Kristle to construct the artesian well on its property, which Kristle completed in 2019. *See* WIS. STAT. § 281.34(3)(a) (2021-22).[1]

¶3 The Committee unanimously denied the CUP application, a decision that Kristle appealed to the Board. The Board denied the CUP application after concluding that it had jurisdiction over Kristle's proposal, that an exception to the CUP requirement did not apply, and that the proposal did not fall under a permissible use for "Residential-Recreational Business" ("R-RB") zoning.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4      Kristle filed an action in the circuit court challenging the Board's decision.    The court upheld the Board's decision, and this appeal followed. Additional facts will be provided as necessary below.

## DISCUSSION

¶5      A person aggrieved by the denial of a CUP may "commence an action [in circuit court] seeking the remedy available by certiorari." WIS. STAT. § 59.694(10).   On appeal, we review a board's decision, not the decision of the circuit court. ***Roberts v. Manitowoc Cnty. Bd. of Adjustment***, 2006 WI App 169, ¶10, 295 Wis. 2d 522, 721 N.W.2d 499.  A court on certiorari review must accord a presumption of correctness and validity to a board's decision, and the party appealing the decision carries the burden of rebutting that presumption.  ***Id.*** When, as here, no additional evidence is taken, our review is limited to:

> (1) whether the board kept within its jurisdiction;
> (2) whether it proceeded on a correct theory of law;
> (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the board might reasonably make the order or determination in question based on the evidence.

*See **State ex rel. Ziervogel v. Washington Cnty. Bd. of Adjustment***, 2004 WI 23, ¶14, 269 Wis. 2d 549, 676 N.W.2d 401.

¶6      On certiorari review, "courts apply different standards when reviewing a municipality's discretionary determination, a municipality's determination of a question of fact, and a municipality's determination of a question of law." ***Ottman v. Town of Primrose***, 2011 WI 18, ¶52, 332 Wis. 2d 3, 796 N.W.2d 411.  Generally, "[l]ike the interpretation and application of a state statute, the interpretation and application of an ordinance is a question of law." ***Id.***, ¶55.  However, when a municipality's ordinance "appears to be unique and

does not parrot a state statute but rather … was drafted by the municipality in an effort to address a local concern," we defer to the municipality's interpretation of that ordinance if it is reasonable.[2] *Id.*, ¶¶59-61. A municipality's interpretation of its own unique ordinance "is unreasonable if it is, as examples: (a) contrary to law; (b) clearly contrary to the intent, history or purpose of the ordinance; (c) without a rational basis; or (d) the interpretation 'directly contravenes the words of the ordinance.'" *Baldwin v. Milwaukee County*, 2018 WI App 29, ¶17, 382 Wis. 2d 145, 913 N.W.2d 194 (citation omitted).

¶7     "The rules for the construction of statutes and municipal ordinances are the same." *Id.*, ¶18 (citation omitted). We begin with the language of the ordinance and, if it is plain, we ordinarily stop the inquiry. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "Words in an ordinance … must be given their common meaning. Technical words or phrases with a peculiar meaning in the law must be construed according to such meaning." *Baldwin*, 382 Wis. 2d 145, ¶18. An ordinance is ambiguous if "it is capable of being understood by reasonably well-informed persons in two or more senses." *See Kalal*, 271 Wis. 2d 633, ¶47.

¶8     First, Kristle argues that the Board erred by concluding that the Board did not share "concurrent jurisdiction" with the DNR pursuant to BAYFIELD CNTY., WIS., ZONING CODE § 13-1-21(b)(6) (July 31, 2018). That provision states that a land use permit "may not be required where the [DNR] has concurrent

---

[2] Unlike deferring to a municipality's reasonable interpretation of a unique ordinance, deferring to a municipality's interpretation of a statewide standard "would give one locality disproportionate authority to influence state standards established by the legislature." *Ottman v. Town of Primrose*, 2011 WI 18, ¶59, 332 Wis. 2d 3, 796 N.W.2d 411.

jurisdiction and the substantive concerns of [zoning code] are addressed and resolved by issuance of a permit under the authority of that regulatory agency." Second, Kristle asserts that the Board erred by concluding that Kristle's proposal did not meet the definition of "Irrigation Facilities, Canals, Dams, Reservoirs, Etc.," as identified in ZONING CODE § 13-1-62(a) (Mar. 30, 2021), and by concluding that the proposal was not permitted by any other conditional use listed in § 13-1-62(a).[3]

¶9    As an initial, overarching matter, Kristle contends that we should not apply deference to the Board's interpretations of the relevant zoning code provisions, even if those interpretations are reasonable, because there is no evidence in the record that those ordinances are unique or were drafted to address a local concern.[4]  We disagree and conclude that the Board's interpretations of the ordinances are entitled to deference under *Ottman* because the ordinances are unique to Bayfield County.

¶10    As the Board asserts on appeal, both zoning code provisions in this case are not "substantially similar to state statute [or] to ordinances across the state."  *See Ottman*, 332 Wis. 2d 3, ¶57 (citation omitted).  We are not aware of, nor has Kristle pointed to, any state statute or other ordinance that contains a "concurrent jurisdiction" provision similar to ZONING CODE § 13-1-21(b)(6).

---

[3] At some point after Kristle's CUP application, ZONING CODE § 13-1-62(a) was amended to remove the "Etc." from the list of permissible uses in "Irrigation Facilities, Canals, Dams, Reservoirs, Etc."  Despite the amendment, we consider the original language cited because the CUP application was submitted prior to the change.

[4] Kristle also asserts that the decision in *Ottman* is contrary to Wisconsin public policy. We reject this argument without reaching its merits because we are bound by our state supreme court's precedent.  *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

Likewise, we are not aware of, nor has Kristle pointed to, any state statute or other ordinance that permits a CUP for "Irrigation Facilities, Canals, Dams, Reservoirs, Etc." like ZONING CODE § 13-1-62(a).[5]  Because the ordinances "appear[] to be unique," the Board is "uniquely poised to determine what" those ordinances mean, and we apply deference to the Board's interpretations of those ordinances if reasonable. *See Ottman*, 332 Wis. 2d 3, ¶60.

## I. Concurrent jurisdiction

¶11    Kristle argues that the Board erred by concluding that the DNR and the County did not have "concurrent jurisdiction" over the proposed water collection facility.[6]  *See* ZONING CODE § 13-1-21(b)(6).  According to Kristle, the

---

[5] Kristle argues that the Board's interpretations of the two zoning code provisions are not entitled to deference under *Ottman* because the Board failed to "submit into 'the record of the agency' *any* substantial evidence, legislative history or other background …, to show how either [ordinance is] unique or drafted to address a local concern."  Kristle does not cite any authority for the proposition that the Board was required to submit the legislative history of the ordinances, and, in fact, *Ottman* contains no such requirement.  *See Ottman*, 332 Wis. 2d 3, ¶¶60, 66-75 (determining that the ordinance in question "appears to be unique" without relying on evidence such as legislative history).

Furthermore, Kristle repeatedly argues that the Board failed to explain why the two zoning code provisions were specifically drafted to address a "local concern."  *See id.*, ¶60.  Logically, however, if an ordinance does not parrot a state statute or other ordinances from around the state, the ordinance's uniqueness demonstrates that it was "drafted by the municipality in an effort to address a local concern."  *See id.*

[6] Kristle's briefing on this topic focuses exclusively on whether the Board proceeded on an incorrect interpretation of the concurrent jurisdiction provision.  *See State ex rel. Ziervogel v. Washington Cnty. Bd. of Adjustment*, 2004 WI 23, ¶14, 269 Wis. 2d 549, 676 N.W.2d 401.  Because our review of the Board's concurrent jurisdiction decision demonstrates that the Board did not proceed on an incorrect theory of law, we conclude that the Board also did not exceed its jurisdiction; act in an arbitrary, oppressive, or unreasonable manner that represented its will and not its judgment; or unreasonably make an evidentiary determination.  *See AllEnergy Corp. v. Trempealeau Cnty. Env. & Land Use Comm.*, 2017 WI 52, ¶8, 375 Wis. 2d 329, 895 N.W.2d 368 (concluding that a municipal committee's decision was not arbitrary, oppressive, or unreasonable as evidenced by the analysis of the first and fourth certiorari inquiries).

well notification that the DNR issued to Kristle for the artesian well should have prevented the Board from requiring Kristle to obtain a CUP for its proposal.

¶12   The zoning code identifies five "classes of land use"—"land uses that are prohibited, permitted by right, permitted as a Class A special use, permitted as a Class B special use, or permitted as a conditional use."  ZONING CODE § 13-1-21(a) (Aug. 27, 2002).  Regardless of the land use class, "[a] land use permit shall be required for any new residence, any building or structure erected, relocated, rebuilt or structurally altered …; any change in the use of the land; or where any use of the land is altered."  ZONING CODE § 13-1-21(b)(1) (Oct. 29, 2013).  Here, the Kristle property is zoned as R-RB and, pursuant to the zoning code, "Irrigation Facilities, Canals, Dams, Reservoirs, Etc." require a land use permit, here a CUP, in that zoning district.  *See* ZONING CODE § 13-1-62(a).

¶13   As explained above, ZONING CODE § 13-1-21(b)(6) provides an exception for land use permits "where the [DNR] has concurrent jurisdiction and the substantive concerns of [the zoning code] are addressed and resolved by issuance of a permit under the authority of that regulatory agency."  Thus, in order for the exception to apply, Kristle was required to demonstrate that:  (1) there is "concurrent jurisdiction" between the DNR and the Board; (2) the DNR issued a permit; and (3) the DNR's permit addressed the substantive concerns of the zoning code.

¶14   The Board concluded that it had jurisdiction over Kristle's proposal because Kristle did not receive a "permit" from the DNR and, accordingly, "the concerns of the County were not addressed."  Even if the DNR's well notification qualified as a permit, the Board determined that "there was nothing implemented

7

by the [DNR] which will alleviate the substantial concerns of the County pursuant to its zoning ordinances."

### A. Concurrent jurisdiction requirement

¶15 Citing **Brandt v. Pewaukee Town Board**, 15 Wis. 2d 6, 112 N.W.2d 157 (1961), Kristle contends that the first requirement was not met in this case because the Board "*never* addressed whether the DNR 'ha[d] concurrent jurisdiction.'" In **Brandt**, our state supreme court reversed and remanded a town board's decision to deny a permit because, among other deficiencies, the board gave "no reason" for denying the permit in violation of the express terms of an ordinance. *Id.* at 9-10. Furthermore, the court held that it could not determine as a matter of law whether the permit was correctly denied because that determination depended on a question of fact. *Id.* at 10.

¶16 We agree with the Board, on appeal, that its "failure" to directly address whether it had concurrent jurisdiction with the DNR is immaterial to our analysis. For starters, unlike the board in **Brandt**, here, the Board gave its reasons for determining that ZONING CODE § 13-1-21(b)(6) did not apply to Kristle's CUP application. Although the Board addressed Kristle's concurrent jurisdiction argument using only the second and third requirements in the ordinance, it is not uncommon for adjudicative bodies to not reach every issue if one is dispositive. *See, e.g.*, **Turner v. Taylor**, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive). In addition, unlike in **Brandt** where a specific ordinance required more reasoning than the board offered, Kristle fails to cite an ordinance that required the Board here to address each requirement in § 13-1-21(b)(6). Lastly, while the **Brandt** court faced a question of fact that required remanding the

permit application decision, jurisdictional issues present questions of law. *See **Ottman***, 332 Wis. 2d 3, ¶54.

¶17    Further, the Board's interpretation of ZONING CODE § 13-1-21(b)(6), was not only reasonable, but it was correct—the Board did not share concurrent jurisdiction with the DNR over Kristle's proposal. To begin, the Board argues that the concurrent jurisdiction exception in § 13-1-21(b)(6) does not apply if the property is "[w]ithin the Shoreland." *See* ZONING CODE § 13-1-21(b)(7) (Oct. 31, 2017). Where a property is "[w]ithin the Shoreland, a permit shall be required for any and all structures" and the concurrent jurisdiction exception does not apply. *Id.* It is undisputed that the Kristle property is "[w]ithin the Shoreland" because it is within 300 feet of a navigable river.[7] By failing to respond to the Board's argument regarding § 13-1-21(b)(7), Kristle has conceded that the concurrent jurisdiction exception in § 13-1-21(b)(6) does not apply to Kristle's property. *See **Charolais Breeding Ranches, Ltd. v. FPS Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

¶18    Regardless, even if ZONING CODE § 13-1-21(b)(6) could be applied to Kristle's property, the Board and the DNR did not share concurrent jurisdiction over Kristle's proposal. "Concurrent" means "[h]aving authority on the same matters." *Concurrent*, BLACK'S LAW DICTIONARY (11th ed. 2019). The DNR has "general supervision and control over the waters of the state," including over "all methods of obtaining groundwater for human consumption." WIS. STAT.

---

[7] Kristle repeatedly states on appeal that the Board made certain arguments "for the first time" in the circuit court. To the extent Kristle argues that the Board was prevented from raising new arguments in the circuit court, Kristle fails to cite to any authority for such a proposition, and we deem that argument undeveloped. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

9

§§ 281.12(1), 280.11(1). The DNR's authority extends to regulating private wells. *See* WIS. STAT. § 281.34 (titled, "Groundwater withdrawals"). Consistent with the DNR's authority to regulate water, the DNR requires owners to "notify" the agency "of the location of a well that is not a high capacity well before construction of the well begins."[8] WIS. STAT. § 281.34(3)(a).

¶19 In contrast, ZONING CODE § 13-1-21(b)(1) regulates land management—i.e., where certain land uses can take place geographically within the county—through zoning, land use permits, and CUPs. Here, Kristle's property was located in an R-RB zoning district, which is intended "to provide for permanent or seasonal residential development and associated recreational use." *See* ZONING CODE § 13-1-61(e) (Oct. 29, 2013). Accordingly, Kristle's proposal to use the land for "Irrigation Facilities, Canals, Dams & Reservoirs" required a CUP. *See* ZONING CODE § 13-1-62(a).

¶20 "Zoning and [the DNR's] licensing powers represent distinct powers that do not conflict with each other." ***Willow Creek Ranch, LLC v. Town of Shelby***, 2000 WI 56, ¶22, 235 Wis. 2d 409, 611 N.W.2d 693. In this case, Bayfield County's zoning ordinances involve demarcating the appropriate areas or locations for "Irrigation Facilities, Canals, Dams & Reservoirs." The zoning

---

[8] Kristle asserts that the Board and the DNR shared concurrent jurisdiction over Kristle's proposal because the DNR may "authorize counties to adopt ordinances" related to well drilling, heat exchange drilling, and pump installing, including an ordinance to "[r]equire approval by the [DNR] before a variance may be granted." *See* WIS. STAT. § 280.21(1). Where a county has adopted ordinances pursuant to § 280.21(1), the DNR and that county share "concurrent enforcement" of the regulations related to wells. Sec. 280.21(5). However, WIS. STAT. ch. 280 concerns "[w]ell drilling, heat exchange drilling, and pump installing." *See id.* Here, Kristle had to comply with WIS. STAT. ch. 281. Regardless of ch. 280's applicability to non-high capacity wells, Kristle conceded before the Board that the County did not adopt an ordinance pursuant to § 280.21, and we will not consider ch. 280 further.

ordinances do not directly regulate the operation of such uses involving water. *See id.*, ¶23. Thus, the DNR's general authority over water in this state and Bayfield County's regulation of land management through zoning do not involve the same considerations or requirements.

### B. Permit requirement

¶21 Additionally, the Board reasonably interpreted ZONING CODE § 13-1-21(b)(6) to conclude that the DNR did not issue a permit to Kristle. The property owner of the location of a proposed *high capacity well* "shall apply to the [DNR] for approval" prior to its construction. WIS. STAT. § 281.34(2). The "approval" of a proposed high capacity well "is actually [the DNR's] decision to issue a permit." *Lake Beulah Mgmt. Dist. v. DNR*, 2011 WI 54, ¶36, 335 Wis. 2d 47, 799 N.W.2d 73. For high capacity well applications, "the legislature has expressly granted the DNR the authority and a general duty to review all permit applications and to decide whether to issue the permit, to issue the permit with conditions, or to deny the application." *Id.*, ¶39.

¶22 Conversely, WIS. STAT. § 281.34(3)(a) requires only that the property owner of the location for a proposed *non-high capacity well* "notify" the DNR of the location of the well and pay a $50 fee prior to its construction. *Id.*; *see also* WIS. ADMIN. CODE § NR 812.10(8) (Oct. 2023)[9] (stating that the DNR issues "well notification report[s]" for non-high capacity wells). Missing from this requirement is a property owner's obligation to obtain a permit to construct a non-high capacity well. *See Carlin Lake Ass'n v. Carlin Club Props., LLC*, 2019

---

[9] All references to WIS. ADMIN. CODE ch. NR 812 are to the October 2023 register unless otherwise noted.

WI App 24, ¶56 n.9, 387 Wis. 2d 640, 929 N.W.2d 228 (stating that a property owner "was not required to seek a DNR permit" because it was not proposing a high capacity well). Thus, while Kristle complied with § 281.34(3)(a) and received a well notification report, it did not receive a permit from the DNR to construct the artesian well.

¶23 Kristle argues that we should also consider whether it received DNR "approval" to construct the artesian well to determine if the concurrent jurisdiction exception applies to Kristle's proposal.[10] According to Kristle, the zoning code and the DNR "repeatedly refer[] to 'permits' and 'approvals' interchangeably." Kristle asserts that "approval" and "permit" are similarly defined in the dictionary and that we should therefore interpret the terms to mean the same thing.

¶24 We disagree that the terms "permit" and "approval" are used interchangeably by the zoning code or the DNR. The word "permit" is used in ZONING CODE § 13-1-21(b)(6), not "approval." Further, the portions of the zoning code cited by Kristle are completely unrelated to § 13-1-21(b)(6). *See* ZONING CODE § 13-1-106(f) (Dec. 10, 2013) (stating that the planning and zoning director can "[w]ithhold permit(s) or approval(s) pursuant to the zoning code"); *see also* *State v. Williams*, 2014 WI 64, ¶39 n.18, 355 Wis. 2d 581, 852 N.W.2d 467 (stating that "comparisons to unrelated statutes are unhelpful" to ascertain the plain meaning of a statute); *American Motorists Ins. Co. v. R & S Meats, Inc.*, 190 Wis. 2d 196, 214, 526 N.W.2d 791 (Ct. App. 1994) ("Where the legislature

---

[10] Kristle contends that we should also consider any future "approval" by the DNR for Kristle to construct "piping of and storage tanks for the water from the well." *See* WIS. ADMIN. CODE § NR 812.33(2). However, Kristle concedes that it has not received such approval. Even if Kristle had received approval for the piping and storage tanks, "approval" in the administrative code does not mean "permit," as we describe in this opinion. *See infra* ¶¶25-26.

uses similar but different terms in a statute, particularly within the same section, [courts] presume it intended those terms to have different, distinct meanings.").

¶25    In addition, the DNR does not use "approval" and "permit" interchangeably.[11]  WISCONSIN ADMIN. CODE ch. NR 812 states that "approval" "means the prior approval of the [DNR]."  WIS. ADMIN. CODE § NR 812.07(7). Accordingly, "[a] well driller or well constructor shall … obtain … a [DNR] issued approval before the well construction operation is started on any well that requires an approval," such as a high capacity well.  *See* WIS. ADMIN. CODE § NR 812.10(5).  "Well notification," which is required for non-high capacity wells, "means a notice provided to the [DNR] in accordance with [WIS. STAT. §] 281.34(3)."[12]  *See* § NR 812.07(124m).

¶26    Conversely, the DNR defines "permit" in WIS. ADMIN. CODE § NR 812.07(71) to mean "a well notification or pump installation permit issued by a county authorized to administer [this chapter] under [WIS. ADMIN. CODE] ch. NR 845 [(Apr. 2023)]."  As relevant here, a "well driller" "shall obtain required permits from counties authorized to administer this chapter."

---

[11] Kristle argues that the notification requirement in WIS. STAT. § 281.34(3)(a) constitutes a permit by citing the layout of the DNR's website, unrelated statutes (including the permit procedure for utility facilities, *see* WIS. STAT. § 30.025), and an email from a DNR employee purportedly sent to a Bayfield County staff member.  None of these sources constitute binding legal authority regarding the meaning of § 281.34(3)(a), and we find them unhelpful to our analysis.

[12] WISCONSIN ADMIN. CODE § NR 812.151(3) states, "A heat exchange driller shall obtain a well notification permit from the [DNR] at least 24 hours prior to the start of drilling." Section NR 812.151(3) is the only reference to "well notification permit" in the administrative code.  To the extent the notification requirements for heat exchange drilling are the same as those for non-high capacity wells, *see supra* note 8, this single, undefined reference does not change the plain meaning of WIS. STAT. § 281.34(3)(a), much less convert the Board's reasonable interpretation into an unreasonable one.

WIS. ADMIN. CODE NR 812.10(9). Thus, the DNR provides distinct definitions for the terms "permit" and "approval." Here, Kristle concedes that Bayfield County does not have a DNR-approved well construction or pump installation ordinance regulating new and existing private water systems.

¶27 In all, the Board's interpretation of ZONING CODE § 13-1-21(b)(6) as requiring a permit—which Kristle did not obtain—rather than "approval" from the DNR was reasonable. Because the Board reasonably interpreted the concurrent jurisdiction exception by concluding that it did not share concurrent jurisdiction with the DNR and that the DNR did not issue a permit, Kristle has provided no basis for us to overturn the Board's decision with respect to the exception.[13] *See Ziervogel*, 269 Wis. 2d 549, ¶14; *see supra* note 6.

## II. Permissible use

¶28 Kristle further contends that the Board's decision should be reversed because the Board operated on an incorrect theory of law by interpreting Kristle's proposal as not fitting within any of the "unambiguous" permissible uses in ZONING CODE § 13-1-62(a). The Board characterized Kristle's proposed use as "collecting, storing and transporting [a]rtesian water off-site for sale." That use, according to the Board, did not fit within the unambiguous meaning of "Irrigation

---

[13] Because we conclude that the Board's interpretation of ZONING CODE § 13-1-21(b)(6) was reasonable on the basis that the Board did not share concurrent jurisdiction with the DNR and the DNR did not issue a permit to Kristle, we need not determine whether the Board reasonably concluded that the "permit" did not address the substantive concerns of the zoning code.

Facilities, Canals, Dams, Reservoirs, Etc.," "and there is no [other applicable] conditional use for R-RB zoning under" § 13-1-62(a).[14]

¶29     "Zoning ordinances are in derogation of the common law and, hence, are to be construed in favor of the free use of private property." ***Cohen v. Dane Cnty. Bd. of Adjustment***, 74 Wis. 2d 87, 91, 246 N.W.2d 112 (1976).  "To operate in derogation of the common law, the provisions of a zoning ordinance must be clear and unambiguous."[15]  ***Heef Realty & Invs., LLP v. City of Cedarburg Bd. of Appeals***, 2015 WI App 23, ¶7, 361 Wis. 2d 185, 861 N.W.2d 797.

¶30     While none of the terms in ZONING CODE § 13-1-62(a) at issue here—"Irrigation Facilities, Canals, Dams, Reservoirs, Etc."—are defined in the zoning code, each term "has a common and accepted meaning, ascertainable by

---

[14] Kristle argues that the Board failed to explain why Kristle's proposal did not meet the criteria for a CUP.  As explained, however, the Board specifically stated why ZONING CODE § 13-1-62(a) did not permit Kristle's proposed use—that is, the proposed use did not meet the definition of any permissible use in the Code.

[15] In its brief-in-chief, Kristle focuses on a Board member's comment during a hearing that ZONING CODE § 13-1-62(a)'s use of the term "et cetera" was "not very clear."  According to Kristle, the Board member's statement demonstrates that the ordinance is ambiguous.  However, our state supreme court has rejected the proposition that an ordinance is ambiguous simply because there is a disagreement as to its meaning.  ***Bruno v. Milwaukee County***, 2003 WI 28, ¶18, 260 Wis. 2d 633, 660 N.W.2d 656 (holding that such an analysis "distorts the test for ambiguity by placing the focus on the reasonableness of the person offering the interpretation rather than the reasonableness of the interpretation being offered").  Likewise, we reject Kristle's assertion that the Board member's single comment regarding the meaning of "Etc." creates ambiguity.

We also note that Kristle takes the Board member's comment out of context.  The Board member went on to state, "To me, my interpretation of et cetera is similar land uses.…  And so my interpretation would be that the other uses in that category—irrigation, canals, reservoirs, and dams—are all uses for the community to retain the water or to put it back in [Lake Superior] somehow."

reference to the dictionary."[16] *See Kalal*, 271 Wis. 2d 633, ¶53. An "irrigation facility" is "something … that is built, installed, or established" to water land "by artificial means to foster plant growth."[17] *See Facility*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/facility (last visited June 6, 2024); *Irrigation*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/irrigation (last visited June 6, 2024). Clearly, Kristle's proposal for "collecting, storing and transporting [a]rtesian water off-site for sale" does not meet the definition of an irrigation facility because the proposal has nothing to do with watering the property to foster plant growth. Consequently, the Board reasonably determined that Kristle's proposal unambiguously did not fit within the meaning of "[i]rrigation facilities."

¶31    "Reservoir" is defined as "a place where something is kept in store" such as "an artificial lake where water is collected and kept in quantity for use" or "a part of an apparatus in which liquid is held." *Reservoir*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/reservoir (last visited June 6, 2024). Kristle's proposed water collection facility is not an artificial lake, and Kristle does not argue that the facility is an apparatus in which liquid is held. In addition, nothing within the meaning of reservoir includes pumping water from a spring using an artesian well and moving that water off-site on a daily basis. Therefore, the Board reasonably determined that the term "[r]eservoirs" was

---

[16] Kristle does not argue that its proposed use fits within the meaning of "canal" or "dam."

[17] For its definition of "[i]rrigation facilities," Kristle cites to two unrelated federal statutes—one regarding federal disaster assistance and the other to the Bureau of Indian Affairs, Department of the Interior. We do not find assistance in Kristle's citations to nonbinding authority for purposes of our analysis because the statutes are unrelated to zoning regulations. *See State v. Williams*, 2014 WI 64, ¶39 n.18, 355 Wis. 2d 581, 852 N.W.2d 467.

unambiguous and that Kristle's proposal went beyond the purpose of keeping water "in store."

¶32　Kristle asserts that we should adopt the definition of reservoir in WIS. ADMIN. CODE ch. NR 812, which states that a reservoir is "a closed structure for storage of water *constructed entirely above or partially below the ground surface*, including a constructed tank or manufactured water storage vessel." WIS. ADMIN. CODE § NR 812.07(87) (emphasis added). "Statutes are closely related when they are in the same chapter, reference one another, or use similar terms." *State v. Reyes Fuerte*, 2017 WI 104, ¶27, 378 Wis. 2d 504, 904 N.W.2d 773. Although ch. NR 812 happens to have some relation to Kristle's proposal, it is unrelated to whether a use is permissible within a Bayfield County zoning district. There is nothing in ZONING CODE § 13-1-62(a) to suggest that Bayfield County adopted the DNR's definition of reservoir when specifying which conditional uses are permitted. *See Williams*, 355 Wis. 2d 581, ¶39 n.18.

¶33　Regardless, even if we applied the meaning of reservoir in WIS. ADMIN. CODE § NR 812.07(87) to ZONING CODE § 13-1-62(a), Kristle's water storage tanks are proposed to be entirely underground, thus the proposal does not meet the definition of a "reservoir." And, again, Kristle proposed to do more on the property than store water—it wanted to pump water from a spring using an artesian well and then transport that water off-site on a daily basis.

¶34　According to Kristle, the term "[r]eservoirs" in ZONING CODE § 13-1-62(a), closely resembles the term "water reservoir system & regulating facilities (Potable)" in ZONING CODE § 13-1-4(70m) (Mar. 30, 2021), which is defined as a "publicly or privately owned facility designed to collect, treat, store, and distribute water, via piping, to a community." There are two issues with

17

Kristle's argument. First, "water reservoir system & regulating facilities (Potable)" uses require a special use permit, not a CUP. Sec. 13-1-62(a). Therefore, the term "[r]eservoirs" in § 13-1-62(a) must have a different meaning than "water reservoir system & regulating facilities (Potable)" in § 13-1-4(70m). Second, Kristle's proposal would not meet the definition in § 13-1-4(70m) because the proposal does not include distributing water "via piping." *See* § 13-1-4(70m).

¶35 "Et cetera" is defined as "and others especially of the same kind;" "and so forth." *Et cetera*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/et%20cetera (last visited June 6, 2024). "[W]hen general words follow specific words in the statutory text, the general words should be construed in light of the specific words listed. Thus, the general word or phrase will encompass only things of the same type as those specific words listed." *Stroede v. Society Ins.*, 2021 WI 43, ¶14, 397 Wis. 2d 17, 959 N.W.2d 305 (citation omitted).

¶36 Here, the term "Etc." "should be limited by the terms that precede it"—irrigation facilities, canals, dams, and reservoirs. *See id.*, ¶15. Those terms all describe things whose purpose is to control water on a property in an effort to manage the property.[18] *See also Canal*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/canal (last visited June 6, 2024);

---

[18] Kristle argues that its proposal fits within the definition of "Etc." because irrigation facilities, canals, dams, and reservoirs fit within the meaning of "water control facilities" as that term is used in WIS. ADMIN. CODE § WEM 7.05(2)(a) (June 2023). That regulation states that funding for disaster relief is not available for "[d]amage to water control facilities including dams, reservoirs, levees, drainage channels, shore protective devices, irrigation facilities and pumping facilities." *Id.* Section WEM 7.05(2)(a) (June 2023) is completely unrelated to Bayfield County Code § 13-1-62(a), and we will not consider it in our analysis. *See Williams*, 355 Wis. 2d 581, ¶39 n.18.

18

*Dam*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/dam (last visited June 6, 2024). Conversely, Kristle proposed to remove water from the property and transport it to another location. Therefore, the Board reasonably determined that Kristle's proposal unambiguously does not fit within the meaning of "Etc."

¶37 Lastly, Kristle asserts that the Board's decision should be reversed because it was "arbitrary, oppressive and unreasonable and represented its will and not its judgment due to the record fact that [the Board] erroneously substituted its own lay opinions for the opinions" of the County's "designee[s]"—the Bayfield County Planning and Zoning Department director and assistant director. Both the director and assistant director sent emails to Kristle stating, in some fashion, that Kristle's proposal would be categorized as "Irrigation Facilities, Canals, Dams, Reservoirs, Etc." Kristle cites ZONING CODE § 13-1-106, which lists the "powers and duties" of the director and assistant director, for the proposition that those individuals are "[o]rdinance-delegated experts." In other words, Kristle contends that § 13-1-106 confers upon the director and assistant director the final authority to interpret the County's zoning ordinances.

¶38 In its brief-in-chief, the Board argues that Kristle "does not explain which of [ZONING CODE] § 13-1-106's [eleven] subsections it is referring to." In response, Kristle asserts that "all" of the powers and duties in § 13-1-106(a)-(k) confer the authority to interpret the County's zoning ordinances; however, Kristle does not explain how it reached that conclusion.

¶39 We will not abandon our neutrality to develop an argument on Kristle's behalf as to why ZONING CODE § 13-1-106 "expressly confer[s]" upon the director and assistant director the authority to have the final decision on an

ordinance's interpretation. *See Lakeland Area Prop. Owners Ass'n, U.A. v. Oneida County*, 2021 WI App 19, ¶17, 396 Wis. 2d 622, 957 N.W.2d 605. Our refusal to develop an argument on a party's behalf is particularly appropriate here, where clearly not "all" of the powers and duties apply to interpreting ordinances. Certainly, for example, § 13-1-106(d) (Feb. 27, 2018) does not "expressly confer" such authority as it states that the director and assistant director have the power and duty to "[h]ave access to any premises for the purpose of performing official duties between 8 a.m. and 8 p.m." Even where the zoning code implicitly authorizes the director and assistant director to interpret ordinances, nothing in the ordinances state that the Board is bound by those interpretations.

¶40 Accordingly, even if the director and assistant director could be characterized as "experts," *see Arndorfer v. Sauk County Board of Adjustment*, 162 Wis. 2d 246, 254, 469 N.W.2d 831 (1991) (stating that a zoning board hearing is "not necessarily an adverse proceeding" (citation omitted)), ZONING CODE § 13-1-106 did not require the Board to defer to the director and assistant directors' opinions about Kristle's proposal and its compliance with ZONING CODE § 13-1-62(a). That was a question of law for the Board to decide. *See* WIS. STAT. § 907.01; *Xerox Corp. v. DOR*, 2009 WI App 113, ¶58, 321 Wis. 2d 181, 772 N.W.2d 677 (concluding that the tax appeals commission was "not bound by definitions provided by [Xerox's] experts or the experts' views of which statutory terms best describe the property" in question (alteration in original)); *Willow Creek Ranch*, 235 Wis. 2d 409, ¶50 ("Binding municipalities to every representation made by subordinate employees would produce severe results for the municipalities."). As the Board asserts on appeal, it was therefore not required to "acknowledge[] the existence of, let alone g[i]ve a reason for overruling," the director's and assistant director's opinions.

¶41    In all, the Board's decision reasonably interpreted ZONING CODE § 13-1-62(a), and Kristle has not provided any other adequate reason for us to overturn the decision. *See Ziervogel*, 269 Wis. 2d 549, ¶14.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.